Filed 3/6/23  Sadeghi v. Li CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| IMAN SADEGHI, | B316405 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC709376) |
| v. | |
| HAO LI, | |
| Defendant and Respondent. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Lia R. Martin, Judge.  Affirmed in part and reversed in part.

Fernald Law Group, Adam P. Zaffos, Gina M. McCoy and Brandon C. Fernald for Plaintiff and Appellant.

Law Offices of Benjamin Davidson, Benjamin Davidson, Bartko Zankel Bunzel & Miller, Charles Griffith Towle and Ronnie Shou for Defendant and Respondent.

# INTRODUCTION

This is appellant Dr. Iman Sadeghi's (Sadeghi) second appeal in this matter. Both appeals arise from events surrounding the termination of his employment at Pinscreen, Inc. (Pinscreen).

Sadeghi's first appeal, *Sadeghi v. Chen* (Feb. 23, 2023, B312596 [nonpub. opn.]) (*Sadeghi I*), was from a judgment of dismissal after the trial court sustained a demurrer filed by Sadeghi's coemployees—Yen-Chun Chen (Chen), Liwen Hu, and Han-Wei Kung. In *Sadeghi I*, this court reversed in part the judgment of dismissal as to Sadeghi's claims for battery and intentional infliction of emotional distress. We affirmed the judgment in all other respects.

Sadeghi's second appeal is from a judgment of dismissal after the trial court sustained a demurrer filed by Pinscreen and its cofounder and chief executive officer, Dr. Hao Li (Li).

We reverse the judgment of dismissal and underlying order sustaining the demurrer as to the causes of action for battery and intentional infliction of emotional distress without leave to amend. We find the sham pleading doctrine does not apply. We also find Sadeghi's claims for battery and intentional infliction of emotional distress are not preempted by workers' compensation exclusivity. We conclude Sadeghi sufficiently pleaded his causes of action for battery and intentional infliction of emotional distress.

We also conclude Sadeghi's invasion of privacy claim fails on demurrer as does his claim for intentional interference with contract. We thus affirm the judgment of dismissal and underlying order sustaining the demurrer as to those causes of action without leave to amend.

Finally, while we find Sadeghi did not sufficiently plead his claims for fraudulent inducement of employment contract via intentional misrepresentation and via concealment, we conclude the trial court abused its discretion in denying Sadeghi leave to amend his complaint, as he adequately showed a reasonable probability the defect can be cured via amendment. We remand those two causes of action to the trial court so that Sadeghi can amend them.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Sadeghi's Complaint*

On June 11, 2018, Sadeghi filed a 160-page complaint against Pinscreen and Li, alleging 17 causes of action, including fraud and deceit; assault and battery; intentional interference with contract; invasion of privacy; and intentional infliction of emotional distress.

The complaint alleged the following:

Sadeghi is an award-winning computer graphics engineer, who joined Google as a software engineer in 2011 and remained employed there for years.

In 2016, Li—the chief executive officer, cofounder, and board member of Pinscreen—solicited Sadeghi to leave Google and join Pinscreen's leadership. Li "knowingly misrepresented Pinscreen's avatar generation capabilities . . . and concealed its various illegal practices" from Sadeghi. Li "intended for Sadeghi to rely on his misrepresentations" so as to "resign from Google, and join Pinscreen, in order to gain access to Sadegh's expertise and experience in digital hair appearance and software engineering." On January 22, 2017, when Sadeghi specifically inquired of Li, in writing, "whether the hair of the presented

3

avatars had been automatically generated" by Pinscreen, Li responded "yes." On January 23, 2017, Sadeghi—"in reliance on Li's fraudulent misrepresentations"—accepted an offer to join Pinscreen as its Vice President of Engineering. Two days later, Sadeghi provided his resignation letter to Google.

Sadeghi's employment at Pinscreen lasted six months— from February 2, 2017 to August 7, 2017. Sadeghi discovered he was "deceived" by Li, who "intentionally conceal[ed] that Li and Pinscreen were involved in data fabrication, academic misconduct, and unlawful practices that Sadeghi learned about only after resigning from Google and joining Pinscreen." Sadeghi learned Li "would embellish Pinscreen's technical capabilities in scientific research submissions and then use deadline pressure to overwork the employees to achieve his inflated claims, and if the employees eventually failed, he would order them to fake the deliverables." Li discussed ways to " 'tweak data to get the results we want.' " Li's misconduct was "deception of the public, fraud on company's actual and potential investors, violation of scientific code of conduct, and a betrayal to academics."

On July 22, 2017, Sadeghi confronted Li, stating Pinscreen "should be truthful to the public and scientific community." Li, however, dismissed Sadeghi's objections and promised to address Sadeghi's concerns at a later date. On August 1, 2017, Pinscreen misrepresented manually prepared hair avatar shapes as automatic during its public demonstration "in front of thousands of attendees and online viewers." On August 6, 2017, Sadeghi requested a meeting with Li to discuss multiple topics, and a meeting was scheduled for the following day.

The next day, August 7, 2017, Sadeghi met with Li, who handed him a notice of termination letter. "In retaliation for

4

[Sadeghi's] . . . whistleblowing regarding Li's . . . unlawful practices, *Pinscreen illegally terminated Sadeghi . . . within Sadeghi's first working hour*." (Italics added.) Sadeghi "requested to meet Pinscreen's full board of directors before the termination decision was final, to which Li responded, 'sure.' " Before Sadeghi had a chance to read the termination letter, Li lost his temper, slammed the conference room door open, and yelled at Sadeghi to leave the room in front of Sadeghi's coworkers, "in a humiliating and embarrassing manner."

Sadeghi attempted to leave Pinscreen's office but Li "physically blocked the door of the office" and "demanded Sadeghi's work laptop" which was inside the backpack Sadeghi was wearing. Sadeghi told Li he "intended to return the laptop before the end of business day" after he "preserved his personal data" from the work laptop. Sadeghi then left Pinscreen's office and headed towards the building elevators. Li "ordered some of Pinscreen's employees to follow Sadeghi."

Li and three Pinscreen employees entered the elevator with Sadeghi. After exiting the elevator, Sadeghi "attempted to leave the building through the lobby" but Li and the three Pinscreen employees "under Li's commands," surrounded Sadeghi, "grabbed" him and the backpack he was wearing, "violently restrained him, forcibly opened his backpack and took possession of Sadeghi's work laptop." Sadeghi "believe[d] that without Li's orders, the other employees would not have participated in committing the crime." As a result, Sadeghi suffered injuries to his eye and his previously dislocated shoulder, requiring medical attention and physical therapy. He also suffered severe mental and emotional distress.

5

Sadeghi attached as an exhibit to the complaint a copy of his employment contract and confidential information agreement attachment (employment contract) with Pinscreen, signed January 23, 2017. The employment contract contains a section entitled "Company Property; Returning Company Documents" with the following terms: Sadeghi agreed and acknowledged he has "*no expectation of privacy* with respect to the Company's telecommunications, networking or information processing systems . . . and that [his] activity and any files or messages on or using any of those systems may be monitored or reviewed at any time without notice." (Italics added.) Sadeghi agreed that "any property situated on the Company's premises and owned by the Company . . . is subject to inspection by Company personnel at any time with or without notice." The contract additionally specified that "at the time of termination of the [work] [r]elationship, [Sadeghi] will deliver to the Company (and will not keep in [his] possession . . .) any and all devices, records, data, . . . equipment, other documents or property . . . belonging to the Company."

Sadeghi alleged Li intentionally interfered with Sadeghi's employment contract with *Google* "on behalf of Pinscreen." He further alleged Li intentionally interfered with Sadeghi's employment contract with *Pinscreen* "based on personal motives unrelated to his agency for Pinscreen." Sadeghi "would not have resigned from Google . . . if Li did not intentionally conceal that Pinscreen and Li were involved in data fabrication . . . and other unlawful practices." Sadeghi was "fraudulently induced to give up his employment at Google which *income and benefits were unsubstituted once Sadeghi was retaliated against and wrongfully terminated from Pinscreen*." (Italics added.) "*As a . . .*

6

*result of . . . Li, willfully deceiving Sadeghi to resign from Google and join Pinscreen, Sadeghi has lost and will continue to lose income and benefits."*  (Italics added.)

B.    *Sadeghi's First Amended Complaint*

On October 5, 2018, Sadeghi filed a 274-page first amended complaint (FAC) against Pinscreen, Li, and the three Pinscreen employees who allegedly assaulted him.  The FAC included 15 causes of action, seven of which were pleaded against Li: (1) fraudulent inducement of employee contract by intentional misrepresentation; (2) fraudulent inducement of employment contract by intentional concealment; (3) battery; (4) intentional interference with contract; (5) intentional infliction of emotional distress (IIED); (6) breach of constructive bailment; and (7) invasion of privacy.

The FAC alleged the same facts set out in the original complaint.  It included a copy of the termination letter, which stated Sadeghi's last day of employment with Pinscreen is August 7, 2017, and proposed a severance package in exchange for a general release by Sadeghi.  The letter "remind[ed]" Sadeghi of his "continuing obligation to uphold the provisions of the [employment contract]."

C.    *Demurrer to the FAC and Trial Court's Ruling*

Pinscreen and Li filed a demurrer and a motion to strike portions of Sadeghi's FAC.  Li presented several arguments as to why the FAC was insufficient.

At the hearing on April 11, 2019, the trial court ruled: The FAC "contains 439 paragraphs of allegations, in 74 pages, plus approximately 200 pages of exhibits.  It includes emails, skypes, diagrams, pictures, policies, conversations, and day-to-day

7

actions of parties and non-parties." The court struck the FAC "as not drawn in conformity with the laws of the state and rules of court" and for containing "irrelevant and improper material" (per Code Civ. Proc., §§ 425.10, subd. (a)(1) & 436, subds. (a), (b)). The court provided Sadeghi a 20-day window to file an amended complaint in conformity with Code of Civil Procedure section 425.10.

D.     *Sadeghi's Second Amended Complaint*

On May 1, 2019, Sadeghi filed a second amended complaint (SAC) which was substantially shorter in length—35 pages. The SAC alleged 15 causes of action, six of which were against Li: (1) fraudulent inducement of employment contract by intentional misrepresentation; (2) fraudulent inducement of employment contract by intentional concealment; (3) battery; (4) intentional interference with contract; (5) invasion of privacy; and (6) IIED. The SAC did not include the allegation that Sadeghi's August 7, 2017 termination was stayed until after a meeting with Pinscreen's board of directors, per his request to Li. It, instead, alleged that on August 7, 2017, "Pinscreen terminated Sadeghi within his first working hour."

*Battery*: Li and the three Pinscreen employees committed battery on Sadeghi via "intentional, non-consensual, offensive, and harmful physical contact" in that they "intentionally touched and grabbed Sadeghi and his backpack," "forcefully restrained him, physically attacked him, and violently shoved him to the ground." The battery "did not fall within the reasonably anticipated conditions of Sadeghi's role as the Vice President of Engineering at Pinscreen" and "was committed outside of Pinscreen's premises and outside the course and scope—and after—Sadeghi's employment." The three employees "followed

8

Li's orders" and "were acting within the course and scope of their employment" when they and Li "physically attacked [Sadeghi] *outside of Pinscreen's premises* and *after [his] termination*." (Italics added.) As a "direct, foreseeable, and proximate result of [the] battery," Sadeghi was harmed and suffered injuries to his left eye and right shoulder, requiring medical attention and physical therapy. He also sought psychotherapy and suffered from posttraumatic stress disorder (PTSD).

*Invasion of Privacy*: Sadeghi had a "reasonable expectation of privacy in his personal backpack." Sadeghi told Li he "intended to return the laptop before the end of business day, on August 7, 2017, . . . after he preserved his personal data" from the laptop. Pinscreen "had no policy prohibiting storing personal data on one's computer, and no such policy was ever communicated to Sadeghi." The three employees "followed Li's orders" and "were acting within the course and scope of their employment" when they, along with Li, "forcefully intruded into Sadeghi's personal belongings and violated Sadeghi's right to privacy in a manner that is highly offensive to a reasonable person." They "intentionally intruded into Sadeghi's backpack" and "took his work laptop by force." The invasion of privacy "did not fall within the reasonably anticipated conditions of Sadeghi's role as the Vice President of Engineering at Pinscreen" and was committed "outside Pinscreen's premises and outside the course and scope—and after—Sadeghi's employment." As a result of this, Sadeghi suffered PTSD and severe distress, and sought psychotherapy.

*IIED*: Li's and the three employees' "extreme and outrageous actions caused Sadeghi to suffer severe mental and emotional distress due to . . . being brutally battered, forcefully

9

invaded, and physically injured."  Their conduct was outrageous because they "acted intentionally and unreasonably with the recognition that their actions are likely to cause Sadeghi mental and emotional distress."  Sadeghi was diagnosed with PTSD as a result of the battery and invasion of his privacy.  Sadeghi's PTSD and physical injuries to his right shoulder "are of such substantial and enduring quality that no reasonable person in civilized society should be expected to endure them."  Sadeghi sought psychotherapy as a result.

   *Intentional Interference with Contract*: Sadeghi's claim for intentional interference with contract no longer alleged that Li intentionally interfered with Sadeghi's employment contract with Google, nor did it allege Li's intentional interference was on behalf of Pinscreen.  It now alleged that Li intentionally interfered with Sadeghi's employment contract with Pinscreen "based in part on personal motives unrelated to his agency for Pinscreen, and based in part for reasons that did not benefit Pinscreen."  Li "feared Sadeghi would expose Li's scientific misconduct, data fabrication, fraud on investors, and performing of work [by Li's wife, Chen] without a proper work visa," all of which would cause Li to incur "most serious professional risks."  Elsewhere in the SAC, it was alleged that each of the defendants "were the agent, principal, employee, or alter ego of one or more of the other defendants and acted with the other defendants' knowledge, consent and approval."

   *Fraudulent Inducement of Employment*: Sadeghi's claims for fraudulent inducement of employment contract by intentional misrepresentation and intentional concealment alleged the following damages: Sadeghi was "damaged by being fraudulently induced to give up his employment at Google . . . and thus lost

10

income and benefits." As a result of "Pinscreen, through Li, willfully deceiving Sadeghi . . . to resign from Google and join Pinscreen, Sadeghi lost and continues to lose income and benefits; suffered and continues to suffer severe mental and emotional distress; and required and continues to seek psychotherapy . . . in an amount to be determined at trial."

The SAC also alleged Li "refused to produce the security camera footage of the incident during the discovery" that was "later obtained from Pinscreen's building security." The SAC included a link to the security footage.[1]

E.     *Demurrer to the SAC and the Trial Court's Ruling*

On June 5, 2019, Li and the three Pinscreen employees jointly filed a demurrer to the SAC. The demurrer was heard on November 21, 2019.

The court ruled: "The original complaint alleges the retrieval [of the work laptop] occurred after Li agreed to having the full board weigh in on the adverse action, and on the premises. In the [FAC] he alleged that this occurred in the building during his termination. The [SAC] alleges that it occurred off the premises after he was terminated." The court cited to the "sham pleading doctrine" and reasoned that allegations in an original pleading that rendered it vulnerable to demurrer or other attack cannot simply be omitted without explanation. The court referred to the fact that Li's demurrer to

---

[1]     Pinscreen, Inc. office building security camera footage attached to the second amended complaint: <http://sadeghi.com/Pinscreens-Assault-and-Battery-on-Sadeghi.mp4> [as of March 11, 2023], archived at https://perma.cc/2UBH-STNC.

11

the FAC argued that Sadeghi's claims were barred under the exclusivity of workers' compensation. The court held Sadeghi's "allegations cannot be changed as to time and location [in the SAC] to avoid Workers Compensation, without explanation." It sustained Li's demurrer to the causes of action for battery, invasion of privacy, and IIED *without leave to amend*.

As for the cause of action for intentional interference with contract, the court ruled: "Representatives of contracting parties, including corporate agents, cannot be liable for intentional or negligent interference with their principals' contracts, and there is no individual-advantage exception to the rule, as it distinguishably applies to the agent-immunity rule and conspiracy." It sustained Li's demurrer to the cause of action for intentional interference with contract *without leave to amend*.

The court further ruled: Sadeghi has not pleaded "cognizable damages" as to his causes of action for fraudulent inducement of employment contract by intentional misrepresentation and intentional concealment. As for Li's argument that "he cannot be liable . . . as he was speaking on behalf of Pinscreen; and only Pinscreen can be liable," the trial court disagreed and held "[w]hile employees are not liable for certain personnel management decisions, that does not apply to fraud." It sustained Li's demurrer to the causes of action for fraudulent inducement of employment contract by intentional misrepresentation and by intentional concealment and granted leave to amend.

F.    *Sadeghi's Third Amended Complaint*

On December 6, 2019, Sadeghi filed a third amended complaint (TAC) against Pinscreen and Li. The TAC included six causes of action, two of which involved Li: fraudulent inducement

12

of employment contract by intentional misrepresentation and fraudulent inducement of employment contract by intentional concealment.

*Fraudulent Inducement of Employment Contract by Intentional Misrepresentation*: Li—"on his own behalf and in his capacity as co-founder and CEO of Pinscreen"—knowingly misrepresented Pinscreen's avatar generation capabilities to Sadeghi and concealed its avatar fabrication and scientific misconduct. Li "personally directed and participated in a willful deception of Sadeghi by intentional misrepresentation" to induce him to resign from Google and join Pinscreen in order to gain access to Sadeghi's expertise in digital hair appearance and software engineering. On January 22, 2017, while Sadeghi was still employed at Google, Li sent a written Facebook message to Sadeghi, confirming that the avatars' hairs were autogenerated by Pinscreen; this was false, as they were "manually prepared and Li intentionally misrepresented them as autogenerated to Sadeghi." Li knew of the falsity of his representations "since he was orchestrating the avatar fabrications himself" and "knew the presented avatars were manually prepared." After "months of Li's continuous solicitation," Sadeghi resigned from Google on January 25, 2017, and joined Pinscreen relying on Li's fraudulent misrepresentations. Sadeghi would not have resigned from Google and joined Pinscreen if he knew about the intentional misrepresentation of material facts. Because Li was also an assistant professor of computer science at the University of Southern California (USC), the allegations of data fabrication against him would have grave consequences as he violated "core ethical commitments of his profession" and would incur "most

13

serious professional risks." Sadeghi reasonably relied on Li's misrepresentations because of Li's professor position at USC.

"Sadeghi's damages of his lost Google income and benefits started after February 1, 2017 when he was fraudulently induced to leave Google and were *temporarily substituted* by his Pinscreen income and benefits from February 2, 2017 to August 7, 2017. Sadeghi's damages of his lost Google income and benefits pertaining to after August 7, 2017 are *unsubstituted*." (Italics added.) He also suffered from mental and emotional distress and sought psychotherapy.

*Fraudulent Inducement of Employment Contract by Intentional Concealment*: "Pinscreen, through Li on his own behalf and as in his capacity as the CEO of Pinscreen, intentionally concealed Pinscreen's avatar fabrication, fraud on investors, scientific misconduct, [and] public deception" from Sadeghi and induced him to resign from Google and join Pinscreen. "Li, on behalf of Pinscreen, as its co-founder and CEO, personally directed and participated in a willful deception of Sadeghi by intentional concealments" in order to induce his resignation from Google and to gain access to Sadeghi's expertise in digital hair appearance. Li intentionally concealed that the avatars he presented to Sadeghi on January 22, 2017 were manually prepared. Li also intentionally concealed that Pinscreen was involved in scientific misconduct, public deception through publicly presenting fabricated avatars, and fraud on its investors and prospective investors. Sadeghi did not know about Li's concealments until after joining Pinscreen and would not have resigned from Google had Li not concealed these material facts. "Li, on behalf of Pinscreen, had a duty to disclose Pinscreen's transgressions to Sadeghi" and breached said duty

14

and actively concealed Pinscreen's avatar fabrication. Li's duty arose from the relationship between employer Pinscreen and prospective employee Sadeghi, entering into an employment contract. Li knew of and had an active role in Pinscreen's transgressions; his concealments were done "on his own behalf and as in his capacity as co-founder and CEO of Pinscreen."

Sadeghi was "damaged by being fraudulently induced to give up his employment at Google by intentional concealment and thus lost income and benefits he had been earning at Google." His "lost Google income and benefits started after February 1, 2017 when he was fraudulently induced to leave Google and were *temporarily substituted* by his Pinscreen income and benefits from February 2, 2017 to August 7, 2017. Sadeghi's damages of his lost Google income and benefits pertaining to after August 7, 2017 are *unsubstituted*." (Italics added.)

G.    *Demurrer to the TAC and the Trial Court's Ruling*

On February 7, 2020, Li and Pinscreen filed a demurrer to the TAC. On October 2, 2020, the trial court heard oral argument and sustained the demurrer as to both causes of action and denied Sadeghi leave to amend.

The court ruled: "The prior demurrer to these causes of action were sustained . . . for the failure to state cognizable damages." The court recited the damages allegations in the TAC and found it "is merely another way of stating his previous allegations, that his damages were caused by his termination from Pinscreen, not by leaving employment with Google." The court cited to case law for the principle that "damages for a fraudulent inducement to change employment are caused when the new employment is for less compensation than promised and/or less than obtained from the prior employer," and held the

15

TAC does not allege as such. The TAC alleged that Sadeghi "lost his compensation when he was terminated from Pinscreen after complaining of activities engaged in by Pinscreen, not when he left Google." The court denied leave to amend because "none of the four versions of the complaint has [Sadeghi] alleged that his compensation at Google was greater than his compensation at Pinscreen as a basis for the fraud claims, or that he was misled as to the compensation he would receive from Pinscreen."

On September 8, 2021, the trial court entered dismissal of the action with prejudice as to Li, as there were no causes of action remaining against him.

This appeal followed.

## DISCUSSION

Sadeghi argues the trial court committed prejudicial error by sustaining (1) the demurrer to the SAC without leave to amend as to the claims for battery, invasion of privacy, IIED, and interference with contract; and (2) the demurrer to the TAC without leave to amend as to the claims for fraudulent inducement of employment contract via intentional misrepresentation and intentional concealment. He contends the SAC and TAC alleged facts sufficient to support the respective claims and argues the workers' compensation exclusivity rule does not bar his claims.

A.    *Standard of Review*

"In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we assume the truth of all properly pleaded facts. We examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory regardless of the label attached to a

16

cause of action.  [Citation.]  We do not assume the truth of contentions, deductions, or conclusions of fact or law, and may disregard allegations that are contrary to the law or to a fact that may be judicially noticed." (*Fischer v. Time Warner Cable Inc.* (2015) 234 Cal.App.4th 784, 790.)  We review de novo a trial court's ruling on a demurrer and examine the operative complaint to determine whether it alleges facts sufficient to state a cause of action under any legal theory.  (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1046 (*King*); *Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 163 (*Dudek*).)  "We will affirm an order sustaining a demurrer on any proper legal ground whether or not the trial court relied on that theory or it was raised by the defendant." (*Fischer*, at p. 790.)

In addition, " '[w]hen a demurrer is sustained *without leave to amend*, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." ' " (*Dudek, supra,* 34 Cal.App.5th at p. 163, italics added.)  Here, Sadeghi shoulders the burden to show a reasonable possibility the operative complaint can be amended to state a cause of action.  (*Id.* at pp. 163–164; *King, supra*, 5 Cal.5th at p. 1050.)  He can make this showing in the first instance to the appellate court.  (*Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 322.)

B.    *Applicable Law*

As mentioned, this is the second appeal in this matter.  We incorporate by reference the applicable law cited to and summarized in the companion appeal, *Sadeghi I*, as to demurrers, workers' compensation exclusivity, and the sham pleading doctrine.

17

C.    *The Sham Pleading Doctrine Does Not Apply*

Mirroring the arguments made by the three Pinscreen employees in *Sadeghi I*, Li argues the SAC omitted or altered certain relevant allegations that were pleaded in the original complaint and the FAC as to the battery claim.  He contends Sadeghi shifted the timing and location of the alleged battery to avoid application of the exclusive remedy rule of workers' compensation.

We disagree, for the same reasons provided in *Sadeghi I*, and we incorporate by reference and adopt our analysis from *Sadeghi I*.  We are not persuaded that the sham pleading doctrine should or must be applied.

D.    *The Trial Court Erred in Sustaining the Demurrer to the Battery Cause of Action*

1.    Workers' Compensation Exclusivity Does Not Bar the Battery Claim

We again incorporate by reference and adopt our analysis from *Sadeghi I*, and add the following:

"An employer's intentional misconduct in connection with actions that are a normal part of the employment relationship, such as demotions and criticism of work practices, resulting in emotional injury is considered to be encompassed within the compensation bargain, even if the misconduct could be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance.'  [Citation.]  Workers' compensation ordinarily provides the exclusive remedy for such an injury." (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 367 (*Singh*); see also *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 902.)

18

However, there are "certain types of intentional employer conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought." (*Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 713–714 (*Fermino*).) Conduct in which an employer steps out of its " 'proper role' " as an employer or conduct of " 'questionable relationship to the employment,' " "however, . . . is not encompassed within the compensation bargain and is not subject to the exclusivity rule." (*Id.* at pp. 713, 717–718, 722–723; *Singh, supra,* 186 Cal.App.4th at p. 367; see *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16 (*Shoemaker*).)  Labor Code[2] section 3602, subdivision (b)(1) provides that an employee may bring an action at law for damages against the employer, as if the workers' compensation exclusivity rule did not apply, where "the employee's injury . . . is proximately caused by a willful physical assault by the employer."

The SAC alleged facts that sufficiently meet the exception set forth in section 3602, subdivision (b)(1).  Li—chief executive officer, cofounder, board member of Pinscreen, and the person who solicited and hired Sadeghi on behalf of Pinscreen— "forcefully restrained him, physically attacked him, and violently shoved him to the ground."  This attack was "intentional" and not consented to by Sadeghi.  As a result of this attack, Sadeghi was harmed and suffered injuries to his left eye and right shoulder, requiring medical attention and physical therapy.  Workers' compensation exclusivity rule does not bar tort remedies resulting from intentional acts that fall outside the risks encompassed within the compensation bargain; this is an

_____

[2]      Undesignated statutory references are to the Labor Code.

example of conduct where the employer stepped out of its proper role. (See *Fermino*, *supra*, 7 Cal.4th at pp. 713–714.) Requesting Sadeghi's work laptop after providing notice of termination is understandable; but to follow Sadeghi and surround, restrain, and physically attack him in an effort to retrieve his work laptop (and instruct three Pinscreen employees to do the same) is not a scenario that falls within a normal part of the employment relationship, and a civil action lies against the employer if the employee's injury was caused by the employer's willful physical assault. (§ 3602, subd. (b)(1); see *Gunnell v. Metrocolor Laboratories, Inc.* (2001) 92 Cal.App.4th 710, 723–728; *Fretland v. County of Humboldt* (1999) 69 Cal.App.4th 1478, 1486–1489 (*Fretland*).) Li's physical attack on Sadeghi falls within "those classes of intentional employer crimes against the employee's person by means of violence and coercion . . . [which] violate the employee's reasonable expectations and transgress the limits of the compensation bargain." (*Fermino*, at p. 723, fn. 7.)

Additionally, the allegations of the SAC confirm Sadeghi's injury was proximately caused by the "willful" physical act of aggression of Li (and the other three employees). (§ 3602, subd. (b)(1).) Li argues Sadeghi did not allege a "willful intent to injure" in his SAC. We disagree. The SAC provides Li "intentionally touched and grabbed Sadeghi and his backpack," "forcefully restrained him, physically attacked him, and violently shoved him to the ground." In situations where one commits violent, injurious acts against an employee, the trier of fact could reasonably infer an intent to injure to take the actions outside the exclusivity rule's protection. (See *Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1009 (*Torres*).) The information alleged amounts to "conduct intended to convey an

20

actual, present, and apparent threat of bodily injury." (*Id.*, at p. 1005.)

The allegations in the SAC adequately met the section 3602, subdivision (b) exception to workers' compensation exclusivity.

We also address another exception applicable here.

Section 3601, subdivision (a)(1) provides that workers' compensation exclusivity does not apply in cases where "the injury or death is proximately caused by the willful and unprovoked physical act of aggression of the other employee." If an employee brings a lawsuit against a coemployee based on the exception set forth in section 3601, subdivision (a)(1), the employer is generally not held liable, directly or indirectly, for damages awarded against, or for a liability incurred by the other employee. (*Torres, supra,* 26 Cal.4th at pp. 1001–1002; *Fretland, supra,* 69 Cal.App.4th at pp. 1486–1489 [employee may not invoke respondeat superior to bring civil action against employer for assault by coemployee].) However, if an employee has been assaulted by a coemployee, the injured employee may sue the employer *if the employer ratified the assault and/or did nothing to discipline the assaulting employee. (Hart v. National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420, 1432 (*Hart*).)

Where the employer ratifies the assailant's conduct, the exclusivity doctrine does not apply. (*Hart, supra,* 189 Cal.App.3d at p. 1432; see also Civ. Code, § 2307 ["An agency may be created, and an authority may be conferred, by a precedent authorization or a subsequent ratification"].) "Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if

21

originally authorized by him.  [Citations.] [¶] *A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is 'inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it.'* " (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73, italics added.)  "[A]n agent's originally unauthorized act may be ratified by implication where the only reasonable interpretation of the principal's conduct is consistent with approval or adoption. [Citation.]  For example, an employer's failure to discharge an employee after learning of the employee's misconduct may be evidence of ratification." (*Allied Mutual Ins. Co. v. Webb* (2001) 91 Cal.App.4th 1190, 1194.)  "The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery.  [Citations.]  Whether an employer has ratified an employee's conduct is generally a factual question." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 169–170.)

In *Sadeghi I*, we found that the section 3601, subdivision (a)(1) exception applied because the three coemployees' physical attack of Sadeghi qualified as a willful and unprovoked physical act of aggression.  We further find Sadeghi's allegation of ratification is sufficient to show Li intended and approved or adopted the three coemployees' actions.  First, the SAC states that the three employees "followed Li's orders" when they "physically attacked" Sadeghi.  Second, there is no allegation that Li did anything to prevent the battery or interfere with the altercation, despite the fact that he was present.  In fact, the

22

allegations provide that Li also physically restrained and attacked Sadeghi along with the three employees.

Thus, because Li intended and approved or adopted the three employees' actions—and, in fact, joined in on the physical attack of Sadeghi—he "ratified" the physical attack.

The workers' compensation exclusivity does not apply to preempt Sadeghi's battery claim.

### 2. The SAC Alleged Sufficient Facts to Constitute Battery

The elements of a cause of action for civil battery are: "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 526–527.)

The pleading alleges a harmful or offensive physical contact by Li grabbing Sadeghi and his backpack, forcefully restraining him, physically attacking him, and violently shoving him to the ground. Sadeghi alleged the contact was intentional and "non-consensual." He also alleged he was harmed by the altercation and suffered injuries to his left eye and right shoulder, requiring medical attention and physical therapy. He sought psychotherapy and suffered from PTSD.

Based on the foregoing, the demurrer to the SAC's battery claim should have been overruled.

E.      *The Trial Court Properly Sustained the Demurrer to the Invasion of Privacy Cause of Action*

We incorporate by reference and adopt our analysis from *Sadeghi I*, which applies here verbatim.  We, again, find workers' compensation exclusivity does not bar Sadeghi's claim.  We further find Sadeghi has not adequately alleged that he had an objectively reasonable expectation of privacy in the contents of the work laptop.  Thus, Sadeghi did not adequately plead facts to state an invasion of privacy claim and fails on demurrer.

F.      *The Trial Court Erred in Sustaining the Demurrer to the IIED Cause of Action*

We note that because we concluded Sadeghi did not plead sufficient facts to establish invasion of privacy, his cause of action for emotional distress fails to the extent it is tethered to the invasion of privacy claim.  We address his IIED claim as a derivative of the battery claim.

We incorporate by reference and adopt our analysis from *Sadeghi I*, which applies here.  We, again, find that workers' compensation exclusivity does not bar Sadeghi's IIED claim.  We also find the elements of IIED are adequately pleaded in the SAC.  Accepting the SAC's allegations as true, the SAC sufficiently states a cause of action for IIED against Li.

G.      *The Trial Court Properly Sustained the Demurrer to the Intentional Interference with Contract Cause of Action*

California recognizes a cause of action against noncontracting parties who interfere with the performance of a contract.  (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 513 (*Applied Equip.*).)  "[A] stranger to a contract may be liable in tort for intentionally interfering with

24

the performance of the contract." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.) The elements necessary to state a cause of action for intentional interference with contractual relations are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. (*Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1603 (*Mintz*).)

It is settled that "corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract." (*Shoemaker*, *supra*, 52 Cal.3d at pp. 24–25 [where the defendants were agents of the employer who were "vested with the power to act for the employer (rightly or wrongly)," they "stand in the place of the employer, because the employer . . . cannot act except through such agents"]; cf. *Applied Equip.*, *supra*, 7 Cal.4th at p. 512, fn. 4 [under "agent's immunity rule," agents and/or employees of a corporation " 'cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage' "; this rule " 'derives from the principle that ordinarily corporate agents and employees acting for or on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract' "].)

Sadeghi argues on appeal that Li is not automatically immune from liability for interfering with Sadeghi's employment contract *with Pinscreen*. He argues the "issue is not so clear cut" as the trial court made it out to be, and the agent's immunity rule

25

does not apply because Li had "ownership or control interests" in the company whose contract is at issue.

Sadeghi primarily relies on and cites to three cases, two of which are depublished and not citeable. The rule relied upon by two of the cases, *Rosenfeld, Meyer & Susman v. Cohen* (1983) 146 Cal.App.3d 200 and *Shapoff v. Scull* (1990) 222 Cal.App.3d 1457, was rejected by our Supreme Court in *Applied Equip.* as it "illogically expands the doctrine of civil conspiracy by imposing tort liability for an alleged wrong—interference with a contract— that the purported tortfeasor is legally incapable of committing" and "obliterates vital and established distinctions between contract and tort theories of liability . . . ." (*Applied Equip.*, *supra*, 7 Cal.4th at pp. 510–511, 513–514, 521, fn. 10.)

The third case Sadeghi relies on, *Woods v. Fox Broadcasting Sub., Inc.* (2005) 129 Cal.App.4th 344 (*Woods*), is inapposite as it did not involve an agent acting for and on behalf of a contracting principal. The court expressly acknowledged the rule that "corporate agents could not be liable for inducing their employer to breach a contract." (*Id.* at p. 352.) The court in *Woods* permitted a claim for inducing a breach of contract against a shareholder who "allegedly interfere[d] in a contract between the corporation whose shares it owns and some other person or entity." (*Id.* at p. 353.) *Woods* distinguished the *shareholder*-defendant from an *agent*-defendant and found the shareholder in that case was not a contracting party nor its agent. (*Ibid*.)

The allegations in the SAC do not provide that Li was a mere shareholder like the defendant in *Woods*. Instead, the SAC alleges Li was the chief executive officer, cofounder, and board member of Pinscreen. The SAC also alleges Li, was "the agent, principal, employee, or alter ego" of Pinscreen and "acted with the

26

other defendants' knowledge, consent, and approval."  Because the representative of a contracting party may not be held liable for the tort of interfering with its principal's contract, Sadeghi cannot state a cause of action against Li for intentional interference with contract rights.  (*Mintz, supra,* 172 Cal.App.4th at p. 1607.)

H.  *The Trial Court Properly Sustained the Demurrer to the Causes of Action for Fraudulent Inducement of Employment Contract by Intentional Misrepresentation and by Concealment*

Claims for fraudulent inducement of employment contract based on intentional misrepresentation vs. intentional concealment derive from a similar set of elements.  "The elements of a cause of action for fraudulent inducement to an employment contract are (1) that the employer *misrepresented* or *concealed* a material fact during the hiring process, (2) knowledge of the falsity of the fact or lack of reasonable grounds for believing it to be true, (3) an intent to induce reliance, (4) justifiable reliance by the employee, and (5) resulting damages."  (*Garamendi v. Golden Eagle Ins. Co.* (2005) 128 Cal.App.4th 452, 470, italics added.)  Only the first element differs, in that plaintiff must show that defendant made a false representation, rather than concealed or suppressed a material fact.

"Fraud must be pleaded with specificity, to provide the defendants with the fullest possible details of the charge so they are able to prepare a defense to this serious attack.  To withstand a demurrer, the facts constituting every element of the fraud must be alleged with particularity, and the claim cannot be salvaged by references to the general policy favoring the liberal

27

construction of pleadings." (*Goldrich v. Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772, 782.)

Sadeghi argues the TAC alleged sufficient facts to state a cause of action as to both fraudulent inducement claims. We analyze the TAC to determine whether it has pleaded sufficient factual allegations to meet the elements of the two fraud claims.

### 1. Misrepresentation and Concealment of Material Fact

Fraudulent inducement of employment contract by intentional misrepresentation, or promissory fraud, is a subspecies of the action for fraud and deceit. *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 (*Lazar*).) An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract. (*Ibid*.)

Here, Sadeghi alleged in the TAC that Li, "on his own behalf and as in his capacity as co-founder and CEO of Pinscreen," intentionally misrepresented Pinscreen's avatar generation capabilities to him and concealed its avatar fabrication and scientific misconduct. Li "intentionally concealed Pinscreen's avatar fabrication, fraud on investors, scientific misconduct, [and] public deception" from Sadeghi. Li made misrepresentations and concealed material facts to induce Sadeghi to resign from Google and join Pinscreen.

The particularity requirement necessitates pleading facts which show how, when, where, to whom, and by what means the representations were tendered. (*Lazar*, *supra*, 12 Cal.4th at p. 645.) In the TAC, Sadeghi alleged that on January 22, 2017, Li sent a written Facebook message to Sadeghi (who was still employed at Google), confirming that the avatars' hairs were autogenerated by Pinscreen; this was false, as they were "manually prepared" and Li "misrepresented" them as

28

"autogenerated" to Sadeghi. The next day, on January 23, 2017, Sadeghi accepted the offer to join Pinscreen.

Sadeghi also alleged the same example in the concealment context. The TAC included allegations that Li intentionally concealed that the avatars he presented to Sadeghi on January 22, 2017 were manually prepared. Li also intentionally concealed that Pinscreen was involved in scientific misconduct, public deception through publicly presenting fabricated avatars, and fraud on its investors and prospective investors.

In determining whether Li concealed or suppressed a material fact, we must also determine whether Li was under a duty to disclose that fact to Sadeghi. (See *Burch v. CertainTeed Corp.* (2019) 34 Cal.App.5th 341, 348.) With respect to concealment, there are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) *when the defendant actively conceals a material fact from the plaintiff*; and (4) when the defendant makes partial representations but also suppresses some material facts. (*Id.* at p. 349.) We find the third instance was sufficiently pleaded. The TAC alleged: "Li, on behalf of Pinscreen, had a duty to disclose Pinscreen's transgressions to Sadeghi" and breached said duty and actively concealed Pinscreen's avatar fabrication—a material fact. Li's duty arose from the relationship between employer Pinscreen and prospective employee Sadeghi, entering into an employment contract.

29

Li argues the pleading reflects that Sadeghi's termination was caused by the alleged whistleblowing and not by any fraudulent inducement by Li occurring six months prior. Not so.

Here, Li's alleged misrepresentation as to Pinscreen's autogeneration of avatars via the Facebook communication was not made in the course of Sadeghi's termination, but rather, is separate from his termination. The misrepresentation Sadeghi alleges was not intended to effect his termination at Google but was intended to induce him to accept an offer of employment at Pinscreen. In fact, the TAC alleged that the day after receiving the misrepresented information that Pinscreen autogenerated the avatars' hair or concealed the material fact that the avatars' hair was fabricated and manually prepared, Sadeghi accepted the offer of employment at Pinscreen. Misrepresentation not intended to effect termination of employment, but instead designed to induce the employee to alter detrimentally his or her position in some other respect, such as resigning from their place of employment to accept employment with a different employer, might form a basis for a valid fraud claim even in the context of a wrongful termination. (*Lazar*, *supra*, 12 Cal.4th at p. 640.) Fraud recovery is precluded "only where 'the result of [the employer]'s misrepresentation is indistinguishable from an ordinary constructive wrongful termination.' " (*Id*. at p. 643.)

### 2. Knowledge of Falsity

The TAC alleged Li's misrepresentation and concealment of Pinscreen's avatar fabrication was knowingly done. Li knew of the falsity of his representations "since he was orchestrating the avatar fabrications himself" and "knew the presented avatars were manually prepared." Li knew of and had an active role in Pinscreen's transgressions; his concealments were done "on his

own behalf and as in his capacity as co-founder and CEO of Pinscreen."  This is sufficient.

### 3. Intent to Induce Reliance

The TAC alleged Li "personally directed and participated in a willful deception of Sadeghi" to *induce him to resign from Google and join Pinscreen* in order to gain access to Sadeghi's expertise in digital hair appearance and software engineering. This is sufficient.

### 4. Justifiable Reliance by Sadeghi

The TAC alleged that after "months of Li's continuous solicitations," Sadeghi resigned from Google on January 25, 2017, and joined Pinscreen relying on Li's fraudulent misrepresentations.  He would not have resigned from Google and joined Pinscreen if he knew about Li's concealments and misrepresentation of material facts.  He further believed Li's representations because Li was an assistant professor of computer science at USC, and any allegation of data fabrication would have had grave consequences for Li because of the "core ethical commitments of his profession."  This is sufficient.

### 5. Resulting Damages

" 'Fraud actions are subject to strict requirements of particularity in pleading.' " (*Furia v. Helm* (2003) 111 Cal.App.4th 945, 956 (*Furia*).)  Fraud, without damages, is not actionable because it fails to state a cause of action.  (*Ibid.*)

Future lost income is recoverable on a promissory fraud theory if the damages are not speculative or remote.  (*Helmer v. Bingham Toyota Isuzu* (2005) 129 Cal.App.4th 1121, 1130.) Damages may properly be considered as part of the "benefit of the

bargain." (*Id*. at p. 1130.) When an employer made a false promise to induce an act by an employee who otherwise would have stayed in his former job, the employer "bargained" to obtain an employee who already had steady employment with another company; it is only fair to compensate the employee for the damages he suffered as a result of leaving that steady employment. (*Id*. at pp. 1130–1131.) In addition, "a fraudulently hired employee . . . may incur a variety of damages 'separate from the termination' itself, such as the expense and disruption of moving or loss of security and income associated with former employment." (*Lazar*, *supra*, 12 Cal.4th at p. 646.)

The TAC alleged Sadeghi's "damages of his lost Google income and benefits started after February 1, 2017 when he was fraudulently induced to leave Google and were *temporarily substituted* by his Pinscreen income and benefits from February 2, 2017 to August 7, 2017." (Italics added.) Sadeghi was "damaged by being fraudulently induced to give up his employment at Google by intentional concealment and thus lost income and benefits he had been earning at Google." "Sadeghi's damages of his lost Google income and benefits pertaining to after August 7, 2017 are *unsubstituted*." (Italics added.)

Sadeghi failed to sufficiently plead that as a result of resigning from Google and beginning employment at Pinscreen, he suffered damages in the form of future lost income. Nowhere in the TAC did Sadeghi allege he earned more at Google than the amount of income/salary he received from Pinscreen. The phrasing that his lost Google income/benefits were "temporarily substituted" from February 2, 2017 to August 7, 2017, and "unsubstituted" after August 7, 2017 is confusing and does not

meet the strict requirements of particularity necessary for fraud actions.  (*Furia, supra,* 111 Cal.App.4th at p. 956.)

That Sadeghi's wrongful termination is also mentioned within the fraud allegations is irrelevant, as the damages Sadeghi alleged arose from fraudulent inducement to resign from his current employment and accept a position at new place of employment, Pinscreen.  The damages Sadeghi alleged do not result from the termination itself, but from Li's misrepresentations via Facebook that caused Sadeghi to resign from Google and accept a position at Pinscreen— misrepresentations which allegedly came to light after Sadeghi began working at Pinscreen.  Moreover, absent Li's misrepresentations, Li/Pinscreen would not have been in the position to terminate Sadeghi because Sadeghi would not have resigned from Google and consented to the employment contract with Pinscreen in the first place.

The TAC did not sufficiently allege the damages element with the requisite particularity needed.  For this reason, Sadeghi's claims for fraudulent inducement of contract via misrepresentation and concealment fails.

I.     *Leave to Amend*

As we are reversing as to the battery and IIED claims, the only claims remaining to be amended are the causes of action for invasion of privacy, intentional interference with contract, fraudulent inducement of employment contract via intentional misrepresentation and intentional concealment.

33

Code of Civil Procedure section 430.41, subdivision (e)(1) provides that a complaint "shall not be amended more than three times, *absent an offer to the trial court as to such additional facts to be pleaded that there is a reasonable possibility the defect can be cured to state a cause of action*. The three-amendment limit shall not include an amendment made without leave of the court." (*Ibid.*, italics added.) Generally, leave to amend is warranted when the complaint is in some way defective, but plaintiff has shown in what manner the complaint can be amended and " 'how that amendment will change the legal effect of [the] pleading.' " (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) Sadeghi shoulders the burden to show a reasonable possibility the defect can be cured by amendment; if it can, the trial court abused its discretion in sustaining the demurrer without leave to amend. (*Dudek*, *supra,* 34 Cal.App.5th at pp. 163–164.)

Sadeghi has not proposed an amendment that would cure the defects as to the claims for invasion of privacy and intentional interference with contract. The issue is forfeited as to those claims. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948; *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.) However, Sadeghi has in fact proposed an amendment that would cure the defect as to the TAC's claims for fraudulent inducement to an employment contracted via intentional misrepresentation and intentional concealment.

In his September 21, 2020 opposition to Li's demurrer to the TAC, Sadeghi explained to the trial court that the "issue appears to be with Sadeghi's use of the terms 'unsubstituted' and 'temporarily substituted' in his pleadings" and admitted that "the more accurate allegation is that Sadeghi's Google earnings were 'temporarily *partially* substituted' by his Pinscreen earnings." Sadeghi then specified his "average earnings from Google was around $23,819/month while his average earnings from Pinscreen was around $15,183/month resulting in damages of $8,636/month in lost earnings immediately after leaving Google." He concluded that he "incurred at least $53,543 in monetary damages *before* his wrongful termination as a result of his fraudulent inducement." He requested that he be given leave to amend the TAC so that these "specific monetary amounts . . . can be added in [as] an amendment."

He repeats this argument on appeal and argues the trial court abused its discretion by not allowing him to amend its complaint to allege that his compensation at Google was greater than his compensation at Pinscreen.

We are persuaded. He has adequately shown a reasonable probability the defect can be cured via amendment. The trial court's finding otherwise amounted to an abuse of discretion. (*Dudek*, *supra*, 34 Cal.App.5th at p. 163.) Sadeghi is entitled to another opportunity to amend these causes of action.

## DISPOSITION

We reverse the judgment of dismissal and underlying order as to causes of action for battery and intentional infliction of emotional distress. We conclude Sadeghi sufficiently pleaded his causes of action for battery and intentional infliction of emotional distress.

We conclude the trial court abused its discretion in denying Sadeghi leave to amend his causes of action for fraudulent inducement of employment contract via intentional misrepresentation and via intentional concealment and direct the trial court on remand to permit Sadeghi to file an amended complaint as to these two causes of action.

In all other respects, we affirm.

Appellant Sadeghi shall recover costs incurred on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.

36